UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20385-CR-GRAHAM/ O'SULLIVAN

UNITED STATES OF AMERICA,

       Plaintiff,

v.

PEDRO HORTON, et al.,

       Defendants.

_____

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on defendant Pedro Horton's Motion to Dismiss for Preindictment Delay. (DE# 50, 10/24/06).[1] This matter was referred to the undersigned by the Honorable Donald L. Graham, United States District Court Judge for the Southern District of Florida. (DE# 66, 11/7/06). Having held a hearing and having reviewed the applicable filings and law, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss for Preindictment Delay (DE# 50, 10/24/06) be **DENIED**.

## INTRODUCTION

Defendant Horton is charged with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of Title 21, United States Code, Section 846; attempted possession with the intent to distribute 500 grams or more of cocaine in

---

[1] Defendant Rollie Crawley's Motion to Adopt Defendant Horton's Motion to Dismiss for Preindictment Delay (DE# 53, 10/30/06) has been granted. (DE# 64, 11/9/06).

violation of Title 21, United States Code, Section 846; carrying a firearm during a drug trafficking crime or crime of violence in violation of Title 18, United States Code, Section 924(c)(1)(A)(I); possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1) and possession of an unregistered firearm in violation of Title 26, United States Code, Section 5861.

Defendant Crawley is charged with conspiracy to possess with the intent to distribute 500 grams or more of cocaine in violation of Title 21, United States Code, Section 846 and attempted possession with the intent to distribute 500 grams or more of cocaine in violation of Title 21, United States Code, Section 846.

## FINDINGS OF FACT

**Underlying Facts**

The charges against the defendants arise from a transaction that occurred on July 4, 2001. The government's theory of the case is that defendants Horton, Crawley and Milton[2] conspired with others to purchase cocaine from Ian Hunt. Mr. Hunt provided defendants Milton and Crawley with sham cocaine. The gun charges against defendant Horton were a result of a gun discovered in his car.

Mr. Hunt, provided conflicting statements to the police. In one statement, Mr. Hunt alleged that he was at home with his children when two vehicles arrived. The first

---

[2] At the hearing, the government stated when that when defendants Milton and Crawley first arrived at Mr. Hunt's house, defendant Horton was not with them. Additionally, the government claimed that a third person, Richard Vivian Neil, rode with Mr. Hunt and defendants Milton and Crawley to the Publix Shopping Center. According to the government, defendant Horton met these men in the Publix Shopping Center parking lot and followed them to Mr. Hunt's house.

vehicle was a 1995 Ford Mustang driven by defendant Milton.[3] Defendant Crawley was a front passenger in that vehicle. The second vehicle was a 2001 Nissan Altima driven by defendant Horton. Defendant Milton advised Mr. Hunt that he was trying to collect a $6,000 debt from Mr. Hunt's friend. Mr. Hunt agreed to assist defendant Milton in collecting the debt. Mr. Hunt called his friend but was unable to reach him. He then advised defendant Milton that he could take him to a liquor store where his friend's father worked in an effort to locate his friend. Mr. Hunt rode with defendants Milton and Crawley to a Publix shopping center.[4] While at the Publix shopping center, defendant Milton used his cellular phone to contact an unknown black male. The black male arrived in a gold Chevy. Defendant Milton retrieved a black Tech 9 machine gun from the unknown black male in the Chevy. When defendant Milton returned to the Mustang, he struck Mr. Hunt in the forehead with the machine gun and demanded the $6,000. Mr. Hunt then took defendants Milton and Crawley to the liquor store but was advised by the manager that Mr. Hunt's friend's father was out of town. Defendant Milton drove Mr. Hunt home. At Mr. Hunt's residence defendant Milton proceeded to beat him. Defendant Milton allowed Mr. Hunt to make a phone call to try to obtain the $6,000. Mr. Hunt called a friend and advised him that he was being beaten by defendant Milton and needed $6,000 to save his life. Mr. Hunt's friend contacted the police.

---

[3] Defendant Milton pled guilty to Counts I and II of the Indictment on November 14, 2006. (DE# 73, 11/21/06).

[4] The liquor store was located at or near the Publix shopping center. The police report described the liquor store as located "in the strip shopping center at SW 160 and 95 Avenue" and the Publix shopping center as being located at "SW 160 Street and 95 Avenue." See Police Report (DE# __).

In a second statement to police, Mr. Hunt admitted that he was going to sell a kilogram of cocaine to defendant Milton for $22,000. However, Mr. Hunt provided defendant Milton with fake cocaine. Defendant Milton immediately realized that the substance was not cocaine and demanded that Mr. Hunt provide him with real cocaine. Mr. Hunt rode around the Colonial Heights neighborhood with defendants Milton and Crawley in an attempt to locate the cocaine. Defendant Milton became agitated with Mr. Hunt when he could not produce the cocaine. The men eventually returned to Mr. Hunt's residence. Upon arrival, defendant Milton began punching Mr. Hunt with his fists. Defendant Milton told Mr. Hunt to contact the person who had the cocaine. Mr. Hunt used his cellular phone to advised some individuals that he was being beaten and was going to be killed by defendant Milton. The two individuals contacted the police. Mr. Hunt further stated that neither defendants Horton or Crawley touched him and that the physical injuries he sustained were from defendant Milton striking him in the face with his fist. Mr. Hunt's beating is not an element of the government's case.

According to defendant Horton's statement to police, he arrived at Mr. Hunt's house shortly before the police arrived. He was there to retrieve a car he had lent to an individual named "Little Mike." When Little Mike told defendant Horton where his car was, he arranged to be picked up by an unknown black male and driven to Mr. Hunt's house. When the police arrived, defendant Horton was outside his car. A short barrel rifle was found inside defendant Horton's car. Defendant Horton's DNA and fingerprints were not on the gun. There are no allegations that Mr. Hunt saw the gun in defendant Horton's car. Mr. Hunt was deported to Jamaica in January 2002. Little Mike died in

February 2002.

**Investigative and Prosecutorial History**

As a result of the July 4, 2001 events, defendant Horton was arrested but never formally charged by the state. On August 3, 2001, the case against defendant Horton was disposed of as a "no action."

On or about November 6, 2001, defendant Horton's case was brought to the U.S. Attorney's Office by the federal Bureau of Alcohol, Tobacco and Firearms ("ATF") as part of a safe neighborhood operation involving convicted felons in possession of firearms.[5] Initially, the case against defendant Horton involved gun charges: possession of an unregistered short barrel rifle and possession of a firearm by a convicted felon. On May 31, 2002, the case was closed by the U.S. Attorney's Office because it did not believe there was sufficient evidence to proceed against defendant Horton on the gun charges.

In October 2002, the Assistant United States Attorney ("AUSA") was working on "Operation Goulds Clean Up," which involved the investigation of the distribution of narcotics in the Goulds, Florida area. Information regarding defendant Horton was presented to the AUSA as part of a drug conspiracy with 11 other individuals involved in home invasions and armed robberies. In October 2002, the AUSA began investigating defendant Horton and the 11 other individuals, which included defendant Crawley.

---

[5] Defendant Crawley was not arrested by the state and was not part of the case that was presented by ATF.

On January 9, 2006, the AUSA met with an incarcerated witness, Tyrone Taylor. Mr. Taylor was the first person who provided the AUSA with direct information regarding the facts underlying this case. Mr. Taylor corroborated the physical evidence and provided the AUSA with statements against interest by defendants Horton and Crawley. Defendant Horton told Mr. Taylor that he had lost his gun, a short barreled rifle, in the ordeal.

On March 16, 2004, Richard Vivian Neil pled guilty to federal heroin charges. Mr. Neil was sentenced on May 27, 2004. Shortly thereafter, the detective investigating defendant Horton's case approached Mr. Neil's prosecutor to determine whether Mr. Neil had any information about defendant Horton's case. Believing the detective was looking for information concerning a homicide, the prosecutor approached Mr. Neil about a homicide. Mr. Neil responded that he did not have any information. This was relayed to the detective.

In November 2004, the AUSA assigned to defendant Horton's case left on maternity leave. The case was assigned to another AUSA who previously tried many of the Goulds Cleanup Cases. The notes in the file show that the new AUSA continued the investigation and interviewed witnesses. In November 2005, the prior AUSA assigned to the case returned from maternity leave. On May 1, 2006, the AUSA met with Mr. Neil for the first time.[6] Mr. Neil provided the AUSA with enough evidence to proceed with Indictment. The federal Indictment was filed on June 23, 2006. (DE# 1,

---

[6] According to the government, Mr. Neil was incarcerated in another state at the time. Thus, it took the AUSA at least a month to have Mr. Neil transferred to this district.

6/23/06).The statute of limitations ran on July 4, 2006.

## ANALYSIS

Defendant Horton moves to dismiss for preindictment delay. He argues that the government's failure to file the Indictment until a few days before the statute of limitations expired resulted in substantial prejudice to his defense. Defendant Horton further claims that the government acted deliberately by deporting a favorable witness, Mr. Hunt, and waiting several years to seek an indictment.

Generally, the statute of limitation provides a safeguard against prejudice arising from the lapse of time between the commission of the crime and the indictment. However, "[t]he Due Process Clause can bar an indictment even when the indictment is brought within the limitation period." United States v. Foxman, 87 F.3d 1220 (11th Cir. 1996). In order to succeed on a claim of preindictment delay, a defendant must show: "(1) the delay caused actual prejudice to the conduct of his defense[] and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage." United States v. Lindstrom, 698 F.2d 1154, 1157 (11th Cir. 1983).

### A.  Prejudice

In support of his prejudice claim, Defendant Horton argues that three critical witnesses, Mr. Hunt, Little Mike and Michelle Stanley (defendant Horton's ex-girlfriend), are no longer available as a result of the government's preindictment delay.[7]

---

[7] Although defendant Crawley moved to adopt defendant Horton's motion to dismiss, he does not argue that Ms. Stanley would have provided favorable testimony in his defense. Rather, defendant Crawley argues that Mr. Hunt would substantiate many of his defenses (DE# 53, 10/30/06) and that Little Mike would have testified that he did not witness any dealings between defendant Crawley and Mr. Hunt.

Defendant Horton claims "[Mr.] Hunt's deportation is fatal to [his] defense because [Mr.] Hunt would have thoroughly exculpated [defendant] Horton on both the gun and drug charges as made clear in the discovery provided to the defense." See Reply In Support of Motion to Dismiss for Pre-indictment Delay (DE# 62 at 3, 11/6/06). Specifically, defendant Horton claims that "[Mr.] Hunt would have testified that [defendant] Horton had nothing to do with the drug deal; was not involved in the negotiations; and was not present when the drug deal went bad.[8] In fact, [Mr.] Hunt could testify as to why [defendant] Horton arrived on the scene, which had zero to do with dealing drugs." Id. (emphasis omitted).

The government's theory of the case is that defendant Horton conspired with others to purchase drugs from Mr. Hunt and was not present when Mr. Hunt delivered the purported drugs to defendants Crawley and Milton. Thus, even if Mr. Hunt would have testified that he did not have any dealings with defendant Horton concerning the drug sale, this testimony would not exculpate defendant Horton and would be consistent with the government's theory of prosecution.

Defendant Horton also claims that another favorable witness, Little Mike, is unavailable because he passed away on February 13, 2002. Defendant Horton gave a post-arrest statement to police indicating that he lent the car where the gun was found to Little Mike. Defendant Horton proffered that Little Mike would have corroborated his statement to the police and testified that he had borrowed defendant Horton's car thus assisting defendant Horton's defense that the gun did not belong to him. Defendant Horton

---

[8] The defendants rely on statements made by Mr. Hunt to the police to show the testimony Mr. Hunt would have provided at trial.

8

also asserts that Ms. Stanley would have corroborated his statements to the police that Little Mike borrowed his car and that another individual took defendant Horton to Mr. Hunt's house to retrieve the car.

For purposes of this Report and Recommendation, the undersigned will assume that the government's delay in seeking an indictment resulted in substantial prejudice to defendants Horton and Crawley and will address the second prong.

## B.    Deliberate Action by the Government to Gain a Tactical Advantage

The investigatory delay in this case does not amount to a denial of due process. "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim... the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." United States v. Lovasco, 431 U.S. 783 (1977). "The delay must also be the product of a deliberate act by the government to gain a tactical advantage." United States v. Foxman, 87 F.3d 1220, 1223 (11th Cir. 1996). The defendants have failed to meet this prong.

The defendants have not shown that the government intentionally delayed the prosecution of the defendants to gain a tactical advantage. The defendants have shown that the U.S. Attorney's Office received the case in November 2001, that Mr. Hunt was deported in January 2002, that Little Mike died in February 2002 and that the Indictment was not filed until June 23, 2006. The government has shown that the delay was the result of a good faith investigation. When it was presented with the case, the U.S. Attorney's Office did not believe it had sufficient evidence to seek an indictment against defendant Horton on the gun charges. It was not until the government interviewed Mr. Neil in May

2006 that the government felt it had enough evidence to proceed with the case. The government sought an indictment shortly thereafter. "Delay caused by a good faith ongoing investigation will not offend fundamental conceptions of justice." Lindstrom, 698 F.2d at 1158 (internal quotation marks and citation omitted).  Thus, the Motion to Dismiss for Preindictment Delay should be denied because the defendants have failed to show the delay was the product of a deliberate action by the government designed to gain a tactical advantage.

In Lovasco, the Supreme Court recognized that the dangers of establishing a rule that would encourage prosecutors to rush to obtain an indictment. It stated as follows:

> It requires no extended argument to establish that prosecutors do not deviate from fundamental concepts of justice when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied that they will be able to establish the suspect's guilty beyond a reasonable doubt. To impose such a duty would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.

Lovasco, 431 U.S. at 790-91 (internal quotation marks and citation omitted); see also Lindstrom, 698 F.2d at 1159 ("We are most reluctant to fashion rules of decision that have the effect of encouraging the government to secure premature indictments.").

At the hearing, the defendants argued that they could satisfy the second prong by showing that the government acted reckless in delaying the Indictment. The defendants further ague that the Court should conduct a balancing test and relies on United States v. Barket, 530 F.2d 189, 193 (8th Cir. 1976) wherein the Eighth Circuit recognized "a process

of balancing the reasonableness of the delay against any resultant prejudice to the defendant." (citation omitted). While the Eleventh Circuit has recognized that there is some authority to support a balancing test, it nonetheless has concluded that the "thrust of binding precedent in this circuit requires the defendant to show both actual prejudice and deliberate prosecutorial delay to gain tactical advantage." Stoner v. Graddick, 751 F.2d 1535, 1542 n. 4 (11th Cir. 1985).

In any event, the defendants have failed to show that the government acted reckless. To support the recklessness claim, defendant Horton's counsel argued that the government received the case on November 6, 2001 and thereafter the same government deported a critical witness.[9] Defendant Horton imputes knowledge of the deportation of Mr. Hunt to the U.S. Attorney's Office because it is part of the Department of Justice which at the time also included Immigration.

Even assuming that the U.S. Attorney's Office had imputed knowledge of Mr. Hunt's deportation, the government has shown that at the time of Mr. Hunt's deportation, he was not a critical witness in defendant Horton's case. The case against defendant Horton initially involved gun charges: possession of an unregistered firearm and possession of a firearm by a convicted felon.  Mr. Hunt was not a witness to the gun charges. Mr. Hunt had already been deported by the time the U.S. Attorney's Office began investigating the drug charges. Thus, the defendants have failed to show that the government acted

---

[9] The government agrees that it can be presumed that the U.S. Attorney's Office knew of Mr. Hunt because of the police report. Defendant Horton concedes there is no evidence that the U.S. Attorney's Office knew of or participated in Mr. Hunt's deportation.

11

reckless in delaying the indictment in this case.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that defendant Pedro Horton's Motion to Dismiss for Preindictment Delay (DE# 50, 10/24/06) be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Donald L. Graham, United States District Judge, within ten (10) days of receipt of a copy of this Report and Recommendation.  See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).

RESPECTFULLY SUBMITTED, in Chambers, at Miami, Florida, this **30th** day of November, 2006.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:

United States District Judge Graham
All Counsel of Record